UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH A. FUOCO,

               Plaintiff,

vs.

BANK OF AMERICA, et al.,

               Defendants.

_____/

Civil Action No.
13-cv-13512

HON. MARK A. GOLDSMITH

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (Dkts. 10, 11) and DISMISSING PLAINTIFF'S COMPLAINT WITH PREJUDICE

### I.  INTRODUCTION

This is a mortgage foreclosure case.  Although acknowledging that he was delinquent in paying his property taxes on three separate occasions, Plaintiff Joseph Fuoco claims Defendants Bank of America and Seterus, Inc. wrongfully imposed and enforced an escrow account, thereby increasing his monthly payments.  Defendants filed motions to dismiss (Dkts. 10, 11), Plaintiff filed a response (Dkt. 16), and Defendants filed replies (Dkts. 19, 20).  The Court heard oral argument on April 9, 2015, and took the matter under advisement.

For the reasons discussed below, the Court concludes that Defendants did not waive their right to impose and enforce an escrow; nor did Defendants act wrongfully or in bad faith with respect to the escrow in light of Plaintiff's admitted failure to pay his taxes on time.  Therefore, the Court grants Defendants' motions and dismisses Plaintiff's complaint with prejudice.

### II.  BACKGROUND

Plaintiff Joseph Fuoco executed a note and mortgage with non-party Quicken Loans Inc.

1

("Quicken") in 2007 for the purchase of property.   See Note (Dkt. 11-2); Mortgage (Dkt. 11-3).

At the same time, Plaintiff signed a Waiver of Escrow with Quicken.   Waiver of Escrow (Dkt.

11-4).[1]   Under that waiver, Plaintiff was to be "solely responsible for the timely payment of any

and all property taxes" and other items, collectively called the "Escrow Items."   Id.   The waiver

also provided, in relevant part, that the lender "shall have the right to establish or reestablish an

escrow account for the payment of the Escrow Items . . . in the event that during the term of the

mortgage loan: . . . Applicant(s) fail(s) to pay any of the Escrow Items in a prompt and timely

manner" or "[i]t becomes necessary for Lender to advance funds to pay all or any portion of the

Escrow Items."   Id.   The mortgage similarly provided that,

> [i]f Borrower is obligated to pay Escrow Items directly, pursuant to
> a waiver, and Borrower fails to pay the amount due for an Escrow
> Item, Lender may exercise its rights under Section 9 and pay such
> amount and Borrower shall then be obligated under Section 9 to
> repay to Lender any such amount.   Lender may revoke the waiver
> as to any or all Escrow Items at any time by a notice given in
> accordance with Section 15 and, upon such revocation, Borrower
> shall pay to Lender all Funds, and in such amounts, that are then
> required under this Section 3.

Mortg. at 5.

Defendant Bank of America was the servicer for the loan.   In 2010, Plaintiff fell behind on

his Summer and Winter taxes.   He ultimately paid these taxes late.   Compl. ¶¶ 9-10 (Dkt. 1-1).

Bank of America raised no objection to the late payment, and it did not impose an escrow, despite

Plaintiff's failure to make a timely payment on an Escrow Item.   Id. ¶ 11.   Plaintiff then fell

---

[1] Under the terms of the mortgage, the borrower was obligated to include payments for taxes, insurance, and other items in his monthly payment, which would be placed in an escrow account for the lender to use to pay these items on the borrower's behalf.   However, the mortgage permitted the lender to waive this escrow requirement, thereby allowing the borrower to not include these amounts in his monthly payments in exchange for paying these items directly.   See Mortg. at 4-5, ¶ 3.   Here, the lender initially agreed to a waiver of the escrow requirement.

behind on his 2011 Winter taxes.  Id. ¶ 12.   When he went to pay these taxes late, he discovered that Bank of America had already paid them.  Id. ¶ 13.   Plaintiff, therefore, sent the money for the taxes to Bank of America, which accepted the funds.  Id. ¶¶ 14-15.   However, Bank of America then imposed an escrow.  Id. ¶ 16.

Despite the imposition of the escrow, Plaintiff continued sending his regular monthly payments — composed only of principal and interest, without escrow amounts included — to Bank of America.  Id. ¶ 17.   Bank of America accepted these payments.  Id. ¶ 18.   After servicing duties were transferred to Seterus, however, Seterus began rejecting these monthly payments.  Id. ¶ 20.[2]   Plaintiff subsequently attempted to make a lump sum of his regular payments, without the escrow amounts included, but this too was rejected by Seterus.  Id. ¶ 21.   Plaintiff then began self-escrowing his monthly payments, rather than making any payment to Seterus.  Id. ¶ 22.   Seterus ultimately initiated foreclosure proceedings, and this suit followed.  See id. ¶¶ 39-40.

Plaintiff brings three causes of action: (i) breach of contract; (ii) declaratory judgment; and (iii) violation of the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act ("MBLSLA"), Mich. Comp. Laws § 445.1651, et seq.[3]   These claims all revolve around

---

[2]   At the motion hearing, Plaintiff's counsel represented to the Court that Seterus accepted two of Plaintiff's principal-and-interest-only monthly payments, before rejecting these same monthly payment amounts thereafter.

[3] Plaintiff brings his claims against "Bank of America" and "Seterus, Inc."   Defendant Bank of America, N.A. responded on behalf of "Bank of America," and then argued that it was exempt under the MBLSLA.   Plaintiff responded that additional discovery is necessary to determine whether Bank of America, N.A. is the real party-entity in interest.   Pl. Resp. at 18-19 (arguing that the Complaint "names 'Bank of America' generically," and that "[d]iscovery will be required to determine whether Bank of America NA is actually the real party of interest").   Because the Court concludes that Plaintiff has failed to state a claim, it need not address this dispute.

Plaintiff's central assertion that Defendants acted in bad faith by imposing and enforcing an escrow, because, according to Plaintiff, Defendants' conduct evidences a waiver of their right to do so.   Compl. ¶¶ 25-29.

### III.   RULE 12(b)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."   In evaluating a motion brought pursuant to Rule 12(b)(6), "[c]ourts must construe the complaint in the light most favorable to plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint states a plausible claim for relief."   Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010) (internal brackets, quotation marks, and citations omitted).   To survive a Rule 12(b)(6) motion, the complaint must contain specific factual allegations, and not just legal conclusions, in support of each claim. Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009).   A complaint will be dismissed unless, when all well-pled factual allegations are accepted as true, the complaint states a "plausible claim for relief."   Id. at 679.

In ruling on a motion to dismiss, the Court may consider the entire complaint, documents incorporated by reference in the complaint and central to the claims, and matters of which a court may take judicial notice.   Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). "[I]f a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document."   Williams v. CitiMortgage, Inc.,

---

Furthermore, in his Complaint, Plaintiff also brought a claim for injunctive relief.  Plaintiff's counsel stated on the record at the motion hearing that he was withdrawing this claim. Accordingly, the Court dismisses this claim.

498 F. App'x 532, 536 (6th Cir. 2012) (citation omitted).[4]

## IV.  DISCUSSION

While acknowledging his own failure to timely pay his taxes on three separate occasions, Plaintiff's primary argument is that Defendants waived their right to impose and enforce an escrow account.   Consequently, Plaintiff claims Defendants acted in bad faith, i.e., breached their contract, in doing so.   In support of this claim, Plaintiff highlights three instances of conduct that he contends evidences a lack of a right to impose and enforce the escrow.

First, Plaintiff claims that Bank of America acted in bad faith by imposing and enforcing the escrow, because Plaintiff ultimately made his tax payments.   Plaintiff highlights that he compensated Bank of America after discovering that Bank of America had paid the delinquent taxes on his behalf.   Compl. ¶¶ 26-27.   The Court concludes that Bank of America was within its rights to impose the escrow, notwithstanding Plaintiff's remedying of the delinquent payments.

The Waiver of Escrow and the mortgage both warned Plaintiff that the failure to timely pay his taxes could result in the imposition of an escrow.   Waiver of Escrow ("Lender shall have the right to establish . . . an escrow account . . . in the event that during the term of the mortgage loan . . . [the borrower] fail(s) to pay [taxes] in a prompt and timely manner."); Mortg. at 4-5, ¶ 3. Plaintiff has not pointed to any language in his mortgage documents declaring that the borrower's remedying of the deficiency by ultimately paying the taxes directly, or by reimbursing the servicer for payments made on the borrower's behalf, rescinds the servicer's ability to impose and enforce the escrow.   Nor is the Court aware of any such language.

---

[4] Bank of America attached the note, mortgage, and Waiver of Escrow to its motion to dismiss. Plaintiff does not dispute the Court's consideration of these documents, and the Court finds that they are central to Plaintiff's claims regarding the tax payments, the escrow, waiver, and corresponding bad faith.   Therefore, the Court may consider them in deciding Defendants' motions.

To the contrary, the mortgage documents specifically required Plaintiff to reimburse the lender in the event that the lender had to make a payment on an Escrow Item when there was no escrow in place.  See Mortg. at 5, ¶ 3 ("If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.").   And the documents then reserved the lender's right to revoke the escrow waiver.  Id. ("Lender may revoke the waiver as to any or all Escrow Items at any time . . .   and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3."); see also Waiver of Escrow (lender may impose an escrow if "[i]t becomes necessary for Lender to advance funds to pay all or any portion of the Escrow Items").   Accordingly, Plaintiff's reimbursement of his delinquent tax payments does not evidence bad faith on the part of Defendants.

Second, Plaintiff claims Bank of America (and, by association, Seterus) waived the right to impose an escrow after failing to do so the first two times Plaintiff was late with his tax payments. Compl. ¶ 24.  In response, Defendants rely on the "anti-waiver" provisions contained in the mortgage documents:

> Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Note at 2, ¶ 6(D).

> Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments . . . in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

6

Mortgage at 10, ¶ 12.[5]   Plaintiff, in turn, argues that the presence of "anti-waiver" clauses does not bar a claim based on waiver, and that whether a party waived a right — even in spite of an "anti-waiver" clause — is a question of fact for the jury.   Pl. Resp. at 14-16.

Both sides rely on the Michigan Supreme Court's decision in Quality Products and Concepts Co. v. Nagel Precision, Inc., 666 N.W.2d 251 (Mich. 2003), in support of their arguments.   In that case, the plaintiff entered into a contractual sales agreement with the defendant, in which the plaintiff would earn commissions on sales the plaintiff made to customers in the contractually-defined sales territory.   The contract expressly defined the scope of the sales territory, excluded sales to certain suppliers, and included written modification and anti-waiver clauses.   Despite these restrictions, however, the plaintiff solicited sales from excluded suppliers; the defendant purportedly knew of the solicitations and never objected.   However, the defendant — pointing to the contractual language and the written modification and anti-waiver clauses — refused to pay the plaintiff commissions for these sales.   The plaintiff responded that the defendant impliedly consented to modify the written agreement and/or waived the requirement that modifications be in writing by failing to object to the plaintiff's actions or notify the plaintiff that there would be no commission.   Id. at 254-255.

The Michigan Supreme Court noted that the case addressed the "tension between the freedom to contract . . . and the provisions of [an] original contract that restrict the manner in which the contract's terms may be waived or modified."   Id. at 253.   The court held that "parties to a contract are free to mutually waive or modify their contract notwithstanding a written

---

[5]   Seterus also highlights language from the mortgage that, "Any such waiver [of the escrow obligation] may only be in writing."   But here there was a written waiver of the escrow obligation. The question is whether Defendants' conduct waived their right to impose and correspondingly enforce the escrow following Plaintiff's failure to satisfy the waiver's conditions.

modification or anti-waiver clause because of the freedom to contract.   However, with or without restrictive amendment clauses, the principle of freedom to contract does not permit a party <u>unilaterally</u> to alter the original contract."   <u>Id.</u> (emphasis in original).   The Michigan Supreme Court then set forth the rule for determining mutuality in these circumstances:

> The mutuality requirement is satisfied where a waiver or modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to modify or waive the particular original contract.   <u>In cases where a party relies on a course of conduct to establish waiver or modification</u>, the law of waiver directs our inquiry and <u>the significance of written modification and anti-waiver provisions regarding the parties' intent is increased</u>.

<u>Id.</u> at 253-254 (emphasis added).   In other words, "whereas an original contract's written modification or anti-waiver clauses do not serve as barriers to [a subsequent waiver], the significance of such clauses regarding the parties' intent . . . is heightened where a party relies on a course of conduct to establish [waiver].   This is because such restrictive . . . clauses are an <u>express mutual statement</u> regarding the parties' expectations . . . ."   <u>Id.</u> at 258-259 (emphasis in original). According to the court, this makes these clauses "highly relevant" — albeit not necessarily dispositive — "in assessing a claim of [waiver] by course of conduct."   <u>Id.</u> at 259.

With respect to the plaintiff in <u>Quality Products</u>, the Michigan Supreme Court concluded that the plaintiff had not shown sufficient conduct to warrant a finding of waiver, in light of the written modification and anti-waiver clauses.   The court noted that the plaintiff had shown, "at best, knowledge and silence on defendant's part of plaintiff's effort to enlarge plaintiff's rights under the contract."   <u>Id.</u> at 259.   The court concluded that the "[d]efendant's mere silence, regardless whether defendant possessed knowledge of plaintiff's sales activity outside the contract, does not here amount to an intentional relinquishment of the sales-territory and

8

sales-commissions limitations in the contract or the contract's restrictive amendment clauses." Id. at 260.

Despite this language in Quality Products, however, Plaintiff seeks the opposite result here. Plaintiff acknowledges the anti-waiver clauses contained in the documents discussed earlier. Pl. Resp. at 16. Further, the mortgage documents clearly permitted Defendants to impose an escrow account based on Plaintiff's untimely tax payments. See Mortg. at 4-5, ¶ 3; Waiver of Escrow. But Plaintiff claims that Bank of America's silence after the first two missed payments suggests a knowing and intentional relinquishment of its right to impose the escrow account upon his third delinquent tax payment, despite the anti-waiver provisions. See Compl. ¶ 24; see also Mortgage at 10, ¶ 12. This fails to satisfy the standard set forth in Quality Products as a matter of law. Quality Prods., 666 N.W.2d at 260 (mere silence is insufficient).

Finally, Plaintiff argues that Defendants' affirmative conduct evidences an intent to waive the right to enforce the escrow. In particular, Plaintiff claims that Defendants' acceptance of principal-and-interest-only payments for a few months after imposition of the escrow suggests that Defendants intentionally relinquished the right to enforce the escrow. Pl. Resp. at 15-16; Compl. ¶ 25. The Court disagrees.

Plaintiff's mortgage documents recognized that Defendants could accept partial payments without a finding of waiver. For example, the mortgage's anti-waiver clauses expressly noted that the acceptance of partial payments would not constitute a waiver of any rights:

> Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments . . . in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

Mortg. at 10, ¶ 12. The mortgage also proclaimed that the "Lender may accept any payment or

9

partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future." Id. at 4, ¶ 1.[6]

Before the imposition of the escrow, the mortgage documents required that Plaintiff make monthly payments covering principal and interest, and allowed Plaintiff to pay his property taxes and insurance separately. See Waiver of Escrow; see also Mortgage at 5, ¶ 3. Once the escrow was imposed, however, Plaintiff's mortgage required him to include these Escrow Items in his monthly payment. See Mortgage at 2 (defining "Periodic Payment" as the "regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument"); see also id. at 4, ¶¶ 1, 3. When he failed to do so, Plaintiff fell behind on his payment obligations, and his continued principal-and-interest-only payments were "insufficient to bring the Loan current." Therefore, Defendants' acceptance of these partial payments did not "waive[] . . . any rights [under the mortgage] or prejudice . . . its rights to refuse such payment or partial payments in the future." Id. at 4, ¶ 1.

Further, the Court concludes that the alleged conduct at issue is insufficient, as a matter of law, to overcome the high bar set in Quality Products. Plaintiff acknowledges that Defendants' acceptance of non-escrow monthly payments lasted for only a few months after the escrow was imposed and before the payments were rejected. See Pl. Resp. at 10-11. And Plaintiff has identified no conduct, other than the acceptance of these payments, suggesting that Defendants mutually intended to waive the enforcement of the escrow after its imposition.

---

[6] The mortgage defines the word "Loan" as "the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest." Mortgage at 2 (emphasis added). Because the Escrow Items became amounts "due under [the] Security Instrument," see id.; see also id. at 4, ¶¶ 1, 3, Plaintiff's failure to include these amounts in his monthly payments resulted in the "Loan" — as defined by the Mortgage —not being current.

10

Moreover, of particular note is what is absent from Plaintiff's Complaint.   Plaintiff does not allege that Defendants failed to follow the proper contractual procedure for implementing the escrow.   Plaintiff does not allege that Defendants failed to give him notice that the escrow had been imposed or of the increased payment amount.   Plaintiff does not allege that Defendants refused to provide him an opportunity to remedy the deficient partial payments — by paying the required escrow amounts — before beginning foreclosure proceedings.   Nor does Plaintiff allege reliance on, or prejudice resulting from, Defendants' period of accepting the partial monthly payments.   Instead, Plaintiff's claim is strictly a waiver argument, based on Defendants' contractually-permissible acceptance of partial payments.   Compl. ¶ 25.

Accepting Plaintiff's theory, however, would lead to an anomalous result.   For example, assume a borrower contractually agrees — pursuant to the terms of a contract with identical anti-waiver provisions as those at issue here — to make monthly payments of $1,000 to the lender, but then immediately and unilaterally decides to only pay $10 instead.   Each month, the borrower sends $10 and the lender accepts it, perhaps as a grace period before exercising harsh remedies. After a few months, the lender decides to stop accepting the insufficient payment, as the lender is permitted to do under the express terms of the agreement.   Under Plaintiff's theory, the lender may have waived its right to demand the full $1,000 per month, despite clear contractual language stating that the lender could accept partial payments and that its acceptance would not constitute a waiver.   This goes against <u>Quality Products</u>' admonition that the evidence of conduct "must overcome . . . the parties' express statements regarding their own ground rules for modification or waiver as reflected in any restrictive . . . clauses."   <u>See</u> <u>Quality Products</u>, 666 N.W.2d at 259.

Further, Plaintiff's theory could lead to a disagreeable outcome.   Lenders faced with a partial payment would have to choose between two undesirable paths: (i) reject the payment and

immediately declare a default or (ii) accept the payment and risk a finding of waiver, despite express, built-in contractual provisions permitting acceptance without waiver.

Numerous courts have agreed that the acceptance of partial payments for an amount due does not constitute waiver, in light of similar anti-waiver clauses as those at issue here.  See Riddle v. Everhome Mortg. Co., No. 286395, 2009 WL 4827425, at *3 (Mich. Ct. App. Dec. 15, 2009) (no waiver where the plain language of the mortgage stated that the "lender accepting less than full payment does not constitute a waiver of any of the lender's rights"); see also Raptis v. Bank of Am., N.A., No. 310089, 2013 WL 3032295, at *2 (Mich. Ct. App. June 18, 2013) ("Yet, because plaintiff was in default on his mortgage payments, the acceptance of this subsequent payment is not clear and convincing evidence that defendant was agreeing to the modification as opposed to accepting payment as required under the original agreement."); Vittands v. Bank of Am., N.A., No. 11-15241, 2012 WL 1696708, at *5 (E.D. Mich. May 15, 2012) (acceptance of partial payments did not affect lender's rights, despite identical mortgage language).  The Court finds that these decisions similarly apply to the facts alleged in this case.  Therefore, the Court concludes that, as a matter of law, Defendants' period of accepting principal-and-interest-only payments while the escrow was in place, without more, does not suffice to show waiver, particularly in light of the language of the anti-waiver clauses and the significance to be attributed to them under Quality Products.   Accordingly, this claim fails.

All of Plaintiff's causes of action — for breach of contract, declaratory judgment, and violation of the MBLSLA — stem from the three allegations regarding the imposition and enforcement of the escrow account described above.   Because Plaintiff is mistaken regarding the wrongfulness of Defendants' imposition and enforcement of the escrow, all of his claims fail.

Therefore, dismissal with prejudice is appropriate.[7]

## V.   CONCLUSION

For the foregoing reasons, the Court grants Defendants' motions to dismiss (Dkts. 10, 11)

and dismisses Plaintiff's complaint with prejudice.   The Court will issue a judgment in favor of

Defendants contemporaneously with this decision.

SO ORDERED.

Dated:   June 30, 2015                          s/Mark A. Goldsmith
            Detroit, Michigan                   MARK A. GOLDSMITH
                                                United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any
unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail
addresses disclosed on the Notice of Electronic Filing on June 30, 2015.

                                                s/Carrie Haddon
                                                Case Manager

---

[7]  Because the Court concludes that Plaintiff has failed to state a claim for waiver or bad faith, the
Court need not and does not address Defendants' alternative arguments regarding insufficient
pleadings under Federal Rule of Civil Procedure 8, that Plaintiff breached the agreement first, that
declaratory relief is unavailable, and that injunctive relief is not an independent claim.

13